■ In the Matter of ESTHER BENENSON, Doing Business as FLUSHING MANOR NURSING HOME, Petitioner, v DAVID AXELROD, as Commissioner of Health Care of the State of New York, Respondent.—Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Commissioner of Health, which reduced petitioner's Medicaid reimbursement rates for the years 1972 and 1973. As the result of an audit to determine the petitioner's operating costs, on which her Medicaid reimbursement rates for 1972 and 1973 would be based, the respondent disallowed certain expenses, a determination that the petitioner, in this proceeding, claims is arbitrary. The controversy centers on the disallowance of $255,000, the petitioner's cost of purchasing the facility, and on the useful lives assigned 12 items for depreciation purposes. At the time of the purchase, the facility involved two business entities: the corporation which owned the home, and the partnership which leased it to operate the business. The shareholders of the corporation and the partners who conducted the business, were all related by blood or marriage to the petitioner, being the petitioner's sister, her brother-in-law and her former husband. Once the acquisition was made, the petitioner alleges she dissolved the corporation and operated the business as a sole proprietorship. The respondent viewed the transfer as a nonarm's length transaction among relatives and, therefore, a reorganization. He noted

that the petitioner had failed to show how the $255,000 was divided between tangible assets and goodwill, that the amount was not reported in the corporate books and that it was, therefore, impossible to determine what portion of the figure was attributed to the partnership dissolution and what portion to the corporate dissolution. On the basis of section 1214 of the Medicaid Provider Reimbursement Manual (CCH Medicare and Medicaid Guide, par 5798), which provides that goodwill which has been internally generated from a reorganization of the provider is not includable in the provider's equity capital at any time, respondent concluded that the $255,000 was not reimbursable. Initially, we reject petitioner's claim that, since the regulation was promulgated after the challenged transactions, the commissioner could not rely on the regulation. Petitioner first sought to include the $255,000 in her report of operating expenses for 1971, after the regulation had been promulgated. In addition, the case relied upon by petitioner *(Rio Hondo Mem. Hosp. v Weinberger,* No. CV 74-3376-IH, US Dist Ct, Cent Dist Cal, 1975) was vacated on appeal and is of no precedential value (see *Pasadena Hosp. Assoc. v United States,* 618 F2d 728, 734). The commissioner's interpretation of the word "reorganization" in the regulation as including the transactions by which petitioner became the sole owner of the Flushing Manor Nursing Home is neither irrational nor unreasonable. Thus, it must be upheld (see *Matter of Howard v Wyman,* 28 NY2d 434, 438). The regulation excludes from the facility's equity capital "goodwill which has not been purchased but has been internally generated as, for example, from a reorganization"; it does not create a presumption that all costs of a reorganization are attributable to internally generated goodwill. Here, it is conceded that petitioner actually made the payments to her former partners. Moreover, it is also conceded that petitioner received some tangible assets and, therefore, the entire $255,000 cannot be attributed solely to goodwill. While the burden of proof is ordinarily on the facility in rate review proceedings (State Administrative Procedure Act, § 306, subd 1; 10 NYCRR 86-2.14 [b] [2] ), there is nothing in the record establishing that petitioner received adequate notice of the basis for the disallowance so that she could submit appropriate documentation. Accordingly, under these circumstances, the commissioner's determination disallowing the entire $255,000 is irrational. Appropriate steps must be taken to allow petitioner the opportunity to establish the value of the assets, other than goodwill, that she received in the transactions. The 12 disputed depreciation items can be divided into three categories. The first category (Item Nos. 2, 3 and 4) consists of building components such as windows, entrances and tiles, which the petitioner contends should have useful lives less than the building itself. The second (Item Nos. 6 through 12) consists of indirect construction costs which the petitioner urges should be apportioned between the building and its components and depreciated accordingly. The third contains Item Nos. 1 and 5 (millwork and painting). In regard to these items, the disagreement is to the length of the useful lives assigned them. The respondent's determination of useful lives in regard to all categories was in accordance with "generally accepted accounting principles" as is required (10 NYCRR 86-2.4). The assets in the first category, whether considered permanent fixtures or part of the building itself, were properly included in the cost of the building and assigned a 40-year life, the same as the building. The second category, as direct overhead items and materials used in constructing the building, were also prop-

erly considered as part of the total cost of the building and depreciated accordingly. The third category could have been assigned the useful life of the building itself. The respondent's determination of a shorter term was, therefore, not arbitrary. Determination modified, by annulling so much thereof as disallows $255,000 as equity capital, and matter remitted to the Commissioner of Health for further proceedings not inconsistent herewith, and, as so modified, confirmed, with costs to petitioner. Mahoney, P. J., Greenblott, Sweeney, Mikoll and Casey, JJ., concur.