· ■ In the Matter of ISRAEL SCHORR, Appellant, v NOAH WEINBERG et al., Respondents.—In a proceeding pursuant to CPLR article 78 to review a determination of the respondent New York State Commissioner of Social Services, dated April 4, 1985, which, after a fair hearing, affirmed a determination of the local agency denying the petitioner's application for replacement of his January 1985 authorization to participate in the food stamp program, which he lost after receiving it, the appeal is from a judgment of the Supreme Court, Rockland County (Marbach, J.), dated October 24, 1985, which dismissed the proceeding.

Ordered that the judgment is affirmed, without costs or disbursements.

The facts of this case are essentially undisputed. The petitioner and his family are recipients of food stamps and in January 1985 they received their regular monthly authorization to participate in the food stamp program, a document otherwise called an "ATP", in the amount of $597. On January 7, 1985, the petitioner's wife telephoned the Rockland County Department of Social Services reporting the ATP as lost and requesting a replacement. She explained that one of her sons had taken the ATP to his school to verify the family's income for the children's eligibility in the school's lunch program. After the school administrator returned the ATP to her son in an unmarked envelope, the boy placed it in his brown paper lunch bag, which he later left unattended for a short period of time, on the table in the school lunchroom. When he returned, he found that the lunch table had been cleared and his lunch bag with the ATP was missing. Thereafter, a search of the school lunchroom and garbage by the petitioner and his children proved fruitless. The local agency denied the petitioner's request for a replacement of the ATP pursuant to a Federal regulation which prohibits a State agency from issuing a replacement ATP "to a household

which reports that its ATP or coupons were lost or misplaced after being received" (7 CFR 273.11 [i] [3]).

The petitioner requested a statutory fair hearing on the matter contending that the circumstances surrounding the disappearance of the ATP were within the purview of another Federal regulation permitting a household to request the replacement of an ATP "which it had received but which was subsequently destroyed in a household disaster such as a fire or flood or stolen" (7 CFR 273.11 [i] [2]). The regulations do not provide a definition of the terms "lost," "misplaced" or "stolen," and set forth only the two stated examples of a "household disaster".

During the hearing, the petitioner maintained that Mrs. Schorr's initial characterization of the disappearance of the ATP as "lost" should not have been relied upon by the local agency as dispositive of the request for the reissuance of the ATP. Rather, he claimed that her report of the surrounding circumstances demonstrated that the document was either stolen or destroyed. It was also brought out at the hearing that after consultation with an attorney, the petitioner reported the incident to the local police who treated the matter as one of lost property rather than as one concerning a theft.

In a determination dated April 4, 1985, the respondent State Commissioner found that the determination of the local agency was correct. After discussing the evidence in the record, the State Commissioner concluded that the loss of the ATP was the direct result of the negligence of the petitioner's son, and that the subject ATP could not be categorized as destroyed in a household disaster under the applicable Federal regulations.

Upon review, Special Term similarly concluded that "the ATP was not stolen but was rather 'lost or misplaced' within the ordinary meaning of those words and the intent of the governing Federal regulation (7 CFR 273.11 [i] [3])".

An agency's determination should not be disturbed if it is rational and based upon substantial evidence on the record considered as a whole (see, e.g., Matter of Howard v Wyman, 28 NY2d 434, 438, rearg denied 29 NY2d 749; Matter of Bostic v Blum, 93 AD2d 862). Upon the record herein we find that the agency's interpretation and application of the applicable Federal regulations are rational and consistent with the expressed intent of the United States Department of Agriculture in proposing the subject regulations to limit the issuance of a replacement ATP, once the ATP has been received by a household (46 Fed Reg 8937).

The petitioners' claim that the circumstances surrounding the loss of his ATP constitutes a household disaster has no merit in view of the stated examples of such disasters expressly set forth under the regulation (7 CFR 273.11 [i] [2]) and the United States Department of Agriculture's explanation concerning this exception under the proposed regulations that such disasters are capable of verification (46 Fed Reg 8937). As to the petitioner's alternate contention that the ATP was stolen, we find no basis to disturb the respondents' conclusion that, based upon the undisputed facts of this case, the disappearance of the ATP was the result of the petitioner's negligence rather than due to its theft. Bracken, J. P., Brown, Niehoff and Kooper, JJ., concur.